Leisa **JONES,** Appellant,

v.

**FIREMAN'S FUND INSURANCE CO.,** Respondent.

**No. 16626.**

Missouri Court of Appeals, Southern District, Division One.

July 2, 1990.

Cobb Young, Joplin, for appellant.

Randy R. Cowherd, Schroff, Glass & Newberry, P.C., Springfield, for respondent.

CROW, Presiding Judge.

Leisa Jones ("plaintiff") brought this action against Fireman's Fund Insurance Co. ("Fireman's") per § 379.200, RSMo 1986, to satisfy a $17,930 judgment against James Darwin Moore and "David Hanson."[1] Fireman's moved for summary judgment in its favor. The motion was granted. Plaintiff appeals. The following facts are undisputed.

Fireman's issued insurance policy number 2–84 JUA 435 57 75 ("the policy") identifying "Marie Speaker & D. Hansen," doing business as Mule Express, as the named insured. The policy period was from February 11, 1987, to February 11, 1988. The policy provided, among other coverage, "bodily injury liability" of $25,000 for each person and $50,000 for each accident, together with "property damage liability" of $10,000 for each accident. The policy's "general declarations" stated the business of the named insured was "taxi service" and its location was Joplin, Missouri.

On February 12, 1987, Marie Speaker and David Hansen signed an agreement with Afco Credit Corporation ("Afco") whereby the latter paid a portion of the premium for the policy. Speaker and Hansen promised to repay Afco by monthly installments in a specified amount. The agreement provided, among other things:

"9. **CANCELLATION:** Afco may cancel the insurance policies and the unpaid balance due to Afco shall be im-

---

1. The correct spelling of the surname is evidently Hansen, as it appears that way in sundry documents pertinent to the case. Inasmuch as there is no contention that judgment debtor "David Hanson" is anyone other than the David Hansen named in the documents, we shall refer to him by the latter surname.

mediately payable by the insured if any of the following occur:

(a) The insured does not pay any installment according to the terms of this Agreement.

....

10. **POWER OF ATTORNEY:** The insured irrevocably appoints Afco its Attorney–In–Fact with full authority to cancel the insurance policies, receive all sums assigned to Afco or in which it has granted Afco a security interest and Afco may execute and deliver on the insured's behalf all documents ... forms and notices of any kind relating to the insurance policies in furtherance of this Agreement."

The agreement showed the address of Speaker and Hansen as 2302 Pennsylvania Ave., Joplin, Mo. 64801.

On or about August 10, 1987, Fireman's received from Afco a written notice stating that the policy is cancelled effective August 14, 1987, "by Afco on behalf of the insured in accordance with the authority given us by the insured to cancel the policies upon default in his payment to Afco."

On September 3, 1987, Fireman's mailed Speaker and Hansen written notice that the policy had been cancelled as of August 14, 1987. The notice was addressed to 2302 Pennsylvania Ave., Joplin, Mo. 64801.

On November 7, 1987, a collision occurred in Joplin between an automobile owned and operated by plaintiff and an automobile owned by David Hansen and operated by James Darwin Moore.

On November 23, 1987, a Fireman's agent in Joplin sent a letter to Hansen stating that the policy was cancelled by Fireman's on August 14, 1987, hence the accident of November 7, 1987, involving plaintiff was "not covered."

On May 18, 1988, plaintiff filed suit (number CV188–435CC) in the Circuit Court of Jasper County against Moore and Hansen seeking money damages for alleged personal injuries and property loss sustained in the collision of November 7, 1987. Plaintiff averred that at the time of the collision Moore was operating Hansen's automobile "within the scope of [Moore's]

employment with ... [Hansen] d/b/a/ Mules Express Taxi."

On October 27, 1988, judgment was entered in case number CV188–435CC in favor of plaintiff and against Moore and Hansen for $17,930. Plaintiff commenced the instant case January 12, 1989, attempting to collect that judgment.

Plaintiff's petition in the instant case pled that the policy was in effect on the date of the accident and that "a certificate of insurance evidencing said policy is attached hereto as Exhibit 'C.' " The exhibit, a copy of a document captioned "EVIDENCE OF PROPERTY INSURANCE," stated: "This is evidence that insurance as identified below has been issued, is in force, and conveys all the rights and privileges afforded under the policy." The exhibit (1) named the company as "Fireman's Fund," (2) identified the insured as "M. Speaker & D. Hansen dba Mule Express," (3) showed the effective date as February 11, 1987, and the expiration date as February 11, 1988, (4) set forth the amount of coverage for bodily injury and property damage, and (5) recited that the premium was "to be financed with AFCO." It then provided:

"CANCELLATION

The policy is subject to the premiums, forms, and rules in effect for each policy period. Should the policy be terminated, the company will give the additional interest identified below ___10___ written notice, and will send notification of any changes to the policy that would affect that interest, in accordance with the policy provisions or as required by law.

ADDITIONAL INTEREST

City of Joplin

303 E 3rd Street

Joplin, MO 64801"

The exhibit showed the nature of the City's interest as: "City Requirement for Liability Insurance."

Fireman's filed an answer admitting issuance of the policy but averring that it "was cancelled on August 14, 1987 due to premium nonpayment, thus, no coverage

existed on November 7, 1987, the date of the purported accident."

Plaintiff filed a reply averring Fireman's was estopped from asserting its affirmative defense that the policy was cancelled August 14, 1987, in that Fireman's had failed to give Hansen "and the City of Joplin as [an] additional interest under the policy written notification that the policy was allegedly cancelled."

Fireman's thereafter moved for summary judgment. Attached to its motion were sundry documents including an affidavit of a "representative" of Fireman's. The affidavit stated that Fireman's cancelled the policy effective August 14, 1987, pursuant to the notice of August 10, 1987, from Afco.

In opposition to the motion for summary judgment, plaintiff filed an affidavit of David Hansen wherein he avowed that the first notice he received that the policy had been cancelled was the letter of November 23, 1987, advising him that plaintiff's accident was not covered.

In written suggestions to the trial court plaintiff asserted, among other arguments, that the policy required that the City of Joplin be given notice of any cancellation of the policy and that the City was not notified of any cancellation prior to November 7, 1987.

Fireman's filed reply suggestions asserting that the policy required Fireman's to mail notice of cancellation to the named insured at his last known address, that Fireman's had done so, and that Missouri courts had consistently held that cancellations are effective in such circumstances whether or not the insured receives the notice. Fireman's added that there was no provision in the policy requiring Fireman's to give the City of Joplin notice of the cancellation.

At the hearing on the motion for summary judgment, plaintiff argued to the trial court that the "certificate of insurance"—Exhibit C attached to plaintiff's petition—required Fireman's to give the City of Joplin "ten days' notice of any cancellation." According to plaintiff, had the City received notice of cancellation at the time

Fireman's mailed notice of cancellation to Speaker and Hansen (September 3, 1987), the City could have revoked the "cab driver's license." Plaintiff maintained that because Fireman's failed to notify the City, the City "allowed this guy to go ahead and drive."

The trial court stated:

". . . I think this case is appropriate for summary judgment. I can sympathize with what [plaintiff's lawyer] was saying, in that we had some taxicab driver out there running around without insurance, but that's really no different than any other private citizen running around without insurance.

. . . The Court finds that the policy was cancelled by the insured acting through its attorney-in-fact long before the accident and that there is no genuine issue as to any material fact. Motion sustained."

Judgment was entered for Fireman's in accordance with the trial court's findings.

Plaintiff's brief presents one point relied on; it reads:

"The [trial] court erred . . . because (1) a genuine issue of material fact existed as to whether Mule Express had commercial liability insurance with [Fireman's] on November 7, 1987, due to [Fireman's] being estopped from disclaiming coverage under its policy and (2) the record was insufficient to determine that [Fireman's] was not estopped from disclaiming coverage under its policy and that it was entitled to a judgement as a matter of law."

In support of her contention that Fireman's was "estopped" from denying coverage, plaintiff cites "Ordinance 41–34 of the Code of the City of Joplin" which, according to plaintiff, provides:

"No permit to operate a taxicab business shall be issued by the city council until and after the applicant therefor shall have filed with and had approved by the council a liability insurance policy.

. . . All policies of insurance shall contain an endorsement reciting that they are issued and filed in compliance with

and subject to the terms of this chapter ... and such policy shall provide that it will not be cancelled without ten (10) days' notice to the council and to the operator.... Cancellation of any such policy of insurance shall operate to terminate the permit of the operator to whom such policy was issued as of the date when such cancellation becomes effective, without notice or action by the council...."

■ The ordinance does not appear in the record on appeal and we find no indication that it was presented to the trial court. Courts may not take judicial notice of municipal ordinances; instead, such ordinances must be admitted in evidence or stipulated by the parties. *General Motors Corp. v. Fair Employment Practices Division,* 574 S.W.2d 394, 400[11] (Mo. banc 1978).

■ However, in its brief Fireman's concedes that ordinance 41–34 requires applicants for taxicab licenses to file proof of liability insurance coverage. Fireman's also acknowledges that ordinance 41–34 provides that such insurance policies will not be cancelled without ten days' notice to the council. Where a statement of fact appears in one party's brief and is conceded to be true in the adversary's brief, we may consider the fact as though it appeared in the record. *Nastasio v. Cinnamon,* 295 S.W.2d 117, 119[1] (Mo.1956); *Hammack v. White,* 464 S.W.2d 520, 522[4] (Mo.App. 1971). We shall therefore assume the ordinance says what the parties say it says.

Even so, argues Fireman's, a plain reading of the ordinance demonstrates that it requires notice by the insurance carrier to the City only when the carrier cancels the policy. Fireman's maintains that in the instant case the insured cancelled the policy. That contention, however, is contrary to the affidavit of the "representative" of Fireman's (mentioned earlier) which stated that pursuant to the notice of August 10, 1987, from Afco, Fireman's "proceeded and did cancel said policy of insurance effective on August 14, 1987."

■ Fireman's also says the certificate of insurance (Exhibit C attached to plaintiff's petition) provides only that Fireman's will notify the City of Joplin should the policy be "terminated." Fireman's asserts that in the instant case the policy was not terminated. Citing *Waynesville Security Bank v. Stuyvesant Insurance Co.,* 499 S.W.2d 218, 220 (Mo.App.1973), Fireman's insists that "cancellation" refers to the revocation of an insurance policy prior to its expiration by act of one or all of the parties, while "termination" refers to the expiration of an insurance policy by lapse of the policy period. Fireman's maintains that the policy in the instant case was cancelled during the policy period, not terminated by lapse of the policy period. Consequently, argues Fireman's, inasmuch as the certificate of insurance required Fireman's to notify the City only if the policy was terminated, Fireman's had no duty to notify the City when the policy was cancelled.

We point out, however, that the certificate of insurance, in addition to providing for written notice to the City should the policy be terminated, also provided that Fireman's would "send notification of any changes to the policy that would affect [the City's] interest, in accordance with the policy provisions or as required by law." Cancellation of the policy, by either the insured or Fireman's, is clearly a change that would affect the City's interest—as expressed in ordinance 41–34—in making certain that taxicabs operating in the City have liability insurance coverage. The ordinance, it will be recalled, provides that cancellation of any taxicab operator's liability insurance policy shall automatically terminate the operator's permit to operate a taxicab business as of the date the cancellation becomes effective. The ordinance also states that the liability insurance policy of a taxicab operator shall provide it will not be cancelled without ten days' notice to the council and to the operator.

We hold that the cancellation of the policy in the instant case was a change to the policy affecting the City's interest. That being so, the provision in the certificate of insurance whereby Fireman's promised to send the City notification of any changes to

the policy that would affect the City's interest as required by law—here ordinance 41–34—required Fireman's to notify the City of the cancellation of the policy.

■ Having reached that conclusion we acknowledge, as pointed out by Fireman's, that nothing in the record shows that Fireman's failed to notify the City that the policy was cancelled effective August 14, 1987.[2] It is equally true, however, that nothing in the record demonstrates that Fireman's did notify the City of the cancellation.

Summary judgment is authorized by Rule 74.04, Missouri Rules of Civil Procedure (20th ed. 1989), which provides in pertinent part:

"(c) ... The judgment sought shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

(e) ... When a motion for summary judgment is made and supported as provided in this Rule 74.04, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

...."

Citing *Fischer v. National Industrial Services, Inc.*, 735 S.W.2d 114, 117 (Mo. App.1987), Fireman's reminds us that when a motion for summary judgment is supported by affidavits (as was its motion in the instant case), an adverse party cannot rely solely upon his pleadings or argue that he has evidence for trial that will disclose issues of fact, rather the adverse party must come forward with affidavits, depositions, or other evidence showing that a genuine issue of material fact exists. Fire-

man's asserts that because plaintiff filed no affidavits controverting the facts stated in the affidavits and exhibits filed by Fireman's, the facts shown by those documents are deemed admitted.

The affidavits and exhibits filed by Fireman's do not, however, address the issue of whether it notified the City of Joplin that the policy was cancelled effective August 14, 1987. Such documents pertain only to the acts of Afco and Fireman's regarding cancellation of the policy and notifying Speaker and Hansen. There is no showing in the record one way or the other as to whether Fireman's notified the City of the cancellation.

Summary judgment is available only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 74.-04(c); *Manar v. Park Lane Medical Center*, 753 S.W.2d 310, 314 (Mo.App.1988). The party granted summary judgment must show both entitlement to it affirmatively and that the other party would not be entitled to recover under any discernible circumstances. *Id.* Summary judgment is not appropriate if there is any theory within the scope of the pleadings or in the broad scope of probable evidence which, if believed by the trier of fact, would authorize a recovery. *Id.* at 314–15. The drastic remedy of summary judgment should be granted only with great caution; if a plaintiff may be able to make a case on any plausible theory, summary judgment for a defendant is not appropriate. *Id.* at 315.

■ Consequently, we must determine whether plaintiff may be able to recover if, at trial, plaintiff establishes that Fireman's failed to send notification to the City of Joplin that the policy had been cancelled effective August 14, 1987.

Neither party cites, and our independent research has not found, a Missouri case

---

**2.** In plaintiff's written response to the motion for summary judgment in the trial court, plaintiff asserted the City was not notified of the

cancellation prior to November 7, 1987. Plaintiff did not, however, document that allegation by affidavit or otherwise.

deciding whether an insurance company that fails to fulfill its promise to notify a municipality of the cancellation of a liability insurance policy covering a taxicab operator can nonetheless deny coverage for an accident occurring after the purported cancellation. There is, however, an Alabama case virtually identical to the instant case: *St. Paul Fire and Marine Insurance Co. v. Elliott*, 545 So.2d 760 (Ala.1989).

In *Elliott* a municipal ordinance required taxicab operators to file a liability insurance policy with the chief of police. The ordinance also required the insurer to give the chief 30 days' notice before cancelling the policy. A taxicab operator purchased insurance, financing the premium with a finance company. The operator authorized the finance company to cancel the policy upon default in payment of any installment. The operator defaulted and the finance company notified the insurer to cancel the policy. The insurer did so, but failed to notify the chief of police. The operator was subsequently involved in an accident in which one passenger was killed and another injured. The trial court ruled that the insurer owed a duty to defend and indemnify the operator. The Supreme Court of Alabama affirmed, pointing out that the purpose of the ordinance was to make certain that the citizens of the municipality were insured against tortious conduct of taxicab operators, and that the insurer had an independent duty to give the chief of police a 30–day notice in order to effectively cancel the policy. *Id.* at 762–63.

A similar result was reached in *Home Indemnity Insurance Co. v. Brugnatelli*, 138 Misc.2d 366, 524 N.Y.S.2d 332 (Sup. 1987), where the insurer failed to file a certificate of termination with a state official as required by state law.

In *Insurance Co. of North America v. B & E Trucking, Inc.*, 665 F.Supp. 764 (W.D. Mo.1987), an insurer filed a certificate of insurance with the Missouri Public Service Commission stating that liability coverage of a trucking company would continue in effect until 30 days had elapsed after written notice to the Commission that the policy had been cancelled. The trucker failed to renew the policy when it expired; however, the insurer neglected to notify the Commission that the policy was no longer in effect. The trucker was subsequently involved in a collision with a third party. The court held that the insurer would be estopped to assert that the policy terminated by reason of failure to renew if the trucker had no other liability insurance coverage at the time of the collision.

Inasmuch as *Elliott, Brugnatelli* and *B & E* have held that coverage exists in circumstances analogous to those in the instant case, and no Missouri state appellate court has held that coverage does not exist in such circumstances, plaintiff may be entitled to recover if, at trial, she establishes (along with the other elements necessary for recovery) that Fireman's failed to send notification to the City of Joplin that the policy had been cancelled.

As noted earlier, summary judgment for a defendant is inappropriate if a plaintiff may be able to make a case on any plausible theory. *Manar*, 753 S.W.2d at 315. As such a possibility exists here, we cannot say the record shows there is no genuine issue as to any material fact and that Fireman's is entitled to judgment in its favor as a matter of law. That being so, summary judgment in favor of Fireman's cannot stand.

The judgment is reversed and the cause is remanded to the trial court for further proceedings.

PREWITT and PARRISH, JJ., concur.