In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

BRUCE S. SCHLAFLY, ) No. ED109327
 )
 Appellant, ) Appeal from the Circuit Court
 ) of St. Louis County
 vs. ) 20SL-CC01069
 )
ANNE S. CORI, ) Honorable Nancy Watkins McLaughlin
 )
 Respondent. ) Filed: August 24, 2021

 Bruce S. Schlafly (“Schlafly” or “Bruce Schlafly”) appeals the trial court’s judgment

dismissing his claims against Anne S. Cori (“Cori”) for abuse of process for failure to state a

claim upon which relief can be granted. We affirm.

 I. BACKGROUND

 Schlafly and Cori are both children of Phyllis Schlafly, the political activist. During

Phyllis Schlafly’s life, she created Eagle Forum (“EF”), a political advocacy entity, Eagle Forum

Education & Legal Defense Fund (“EFELDF”), a fundraising entity, and Eagle Trust Fund

(“ETF”), which owns the property and intellectual property utilized by EF and EFELDF

(together, “Eagle Entities”). Cori was a director of EF, and both Bruce Schlafly and Cori were

directors of EFELDF. In 2016, a dispute arose among the directors regarding the direction of

Eagle Entities, after which Phyllis Schlafly formed a new entity, Phyllis Schlafly’s American

Eagles (“PSAE”). Cori initiated litigation against EF and others in Madison County, Illinois and
against PSAE in the United States District Court for the Southern District of Illinois. As a result

of the litigation, Phyllis Schlafly in May and August 2016 executed two amendments to her

revocable trust (“trust”), reducing Cori’s share of the trust by the litigation costs incurred by the

defendants in the two lawsuits.

 Phyllis Schlafly died in September 2016, and Cori filed a petition in the probate division

in the Circuit Court of St. Louis County (“the probate division”), Anne S. Cori v. John F.

Schlafly, et al. (Cause No. 17SL-PR00926), seeking to set aside the May and August 2016

amendments to the trust (“the trust suit”). The trust suit claimed that Phyllis Schlafly lacked

testamentary capacity and was subject to undue influence when she executed the amendments.

Cori named John Schlafly, individually and as trustee, and each qualified beneficiary of the trust,

including Bruce Schlafly, as respondents in the trust suit. John Schlafly, Bruce Schlafly, and

other beneficiaries filed counterclaims. The probate division appointed a special fiduciary to

administer the trust during the pendency of the trust suit. In February 2020, in a joint stipulation

of dismissal, Cori dismissed her trust suit with prejudice pursuant to a settlement agreement with

John Schlafly as trustee. 1

 Shortly after Cori dismissed her trust suit, Bruce Schlafly filed a petition for damages

against Cori, asserting abuse of process in filing and litigating the trust suit. In his second

amended petition, he claimed that, although in the trust suit Cori nominally sought to void the

May and August 2016 amendments pursuant to Section 456.4-406 and Section 456.6-601,

RSMo. 2016, the trust suit was in fact an illegal, improper, or perverted use of legal process to

accomplish unlawful ends. Specifically, he asserted Cori’s goals and improper ends were: (1) to

compel or pressure him to (a) resign as a director of Eagle Enterprises and end his involvement

1
 Also in the joint stipulation of dismissal, John Schlafly and several other beneficiaries dismissed their
counterclaims against Cori. Bruce Schlafly’s counterclaim remains pending at the time of this appeal.

 2
with PSAE, (b) give Cori or allow Cori to use property belonging to Eagle Enterprises, (c) cede

his inheritance to Cori, (d) incur litigation costs, and (e) divert his attention away from his

medical practice and imperil his medical license; (2) to deplete trust assets; (3) to harass him; and

(4) to force a favorable legal outcome in Cori’s lawsuits in Madison County and the Southern

District of Illinois.

 Cori filed a motion to dismiss the second amended petition, asserting Bruce Schlafly had

failed to plead the first element of a claim for abuse of process. The trial court granted Cori’s

motion and dismissed Bruce Schlafly’s 2 second amended petition with prejudice. This appeal

follows.

 II. DISCUSSION

 Bruce Schlafly raises two points on appeal, arguing in both that the trial court erred in

dismissing his second amended petition for abuse of process because he had stated a claim upon

which relief could be granted. He makes the same legal arguments for Points I and II, and we

address them together for ease of analysis.

A. Standard of Review

 This Court reviews de novo the grant of a motion to dismiss. Amalaco LLC v. Butero,

593 S.W.3d 647, 650 (Mo. App. E.D. 2019). A motion to dismiss for failure to state a claim

upon which relief can be granted is only a test of the adequacy of the plaintiff’s petition. Id. at

650-51. We review the petition to determine if the facts alleged meet the elements of a

recognized cause of action, and we assume all of the plaintiff’s allegations in the petition are true

and liberally grant the plaintiff all reasonable inferences therefrom. Id. at 651. If a plaintiff’s

petition sets forth any set of facts that, if proven, would entitle the plaintiff to relief, then the

2
 In its judgment, the trial court mistakenly identified Cori as the plaintiff, but the trial court corrected its error in an
order nunc pro tunc, in which it amended the judgment to identify Bruce Schlafly as the plaintiff.

 3
petition states a claim. Brewer v. Cosgrove, 498 S.W.3d 837, 843 (Mo. App. E.D. 2016).

However, in reviewing a dismissal for failure to state a claim, we disregard conclusory

allegations that are not supported by facts. Debrill v. Normandy Associates, Inc., 383 S.W.3d 77,

90 (Mo. App. E.D. 2012).

B. The Trust Suit Was an Authorized Use of Process

 In his first point on appeal, Bruce Schlafly argues the trial court erred in dismissing

Count I of his second amended petition because Count I stated a claim upon which relief could

be granted for abuse of process, in that it alleged Cori committed an abuse of process by filing

and litigating the false claims of undue influence and incapacity in the trust suit to effectuate

unlawful ends relating to Eagle Entities, gain control of corporate property, coerce Bruce

Schlafly into resigning from any involvement in Eagle Entities, halt and obstruct PSEA’s

operations, harass him, and interfere with his medical practice. In his second point, Bruce

Schlafly argues the trial court erred in dismissing Count II of his second amended petition on the

same grounds. We disagree with both points.

 “The general rule is that no right of action exists for damages resulting from the initiation

of a civil action, unless the action was prosecuted maliciously and without probable cause or

there was an abuse of process.” Trustees of Clayton Terrace Subdivision v. 6 Clayton Terrace,

LLC, 585 S.W.3d 269, 277 (Mo. banc 2019) (citation omitted). To plead a claim for abuse of

process, the plaintiff must set forth the ultimate facts establishing the following three elements:

(1) the defendant made an illegal, improper, or perverted use of process, which use was neither

warranted nor authorized by the process; (2) the defendant had an improper purpose in pursuing

the improper use of process; and (3) damages resulted. See id.; see also Crow v. Crawford &

 4
Co., 259 S.W.3d 104, 116 (Mo. App. E.D. 2008); Muegler v. Berndsen, 964 S.W.2d 459, 462

(Mo. App. E.D. 1998). At issue here is the first element, “use of process.”

 The phrase “use of process” as used in the first element, refers to “some willful, definite

act not authorized by the process or aimed at an objective not legitimate in the proper

employment of such process.” Ritterbusch v. Holt, 789 S.W.2d 491, 493 (Mo. banc 1990); see

also Crow, 259 S.W.3d at 116. The test for liability in an abuse-of-process claim is whether the

process was used to accomplish an unlawful end or to compel the opposite party to do some

collateral thing that it could not be legally compelled to do. Trustees of Clayton Terrace, 585

S.W.3d at 278. Abuse of process occurs when a party employs legal process in a manner

technically correct but for a wrongful and malicious purpose to attain an end that was not

intended or envisioned by the type of legal process employed. See id.; see also Montgomery

GMC Trucks, Inc. v. Nunn, 657 S.W.2d 334, 336 (Mo. App. S.D. 1983).

 By contrast, there is no liability for abuse of process when a party has done nothing more

than pursue a lawsuit to its authorized conclusion regardless of how evil a motive he possessed in

initiating the process. Pipefitters Health & Welfare Trust v. Waldo R., Inc., 760 S.W.2d 196,

198-99 (Mo. App. E.D. 1988). “If the action is confined to its regular and legitimate function in

relation to the cause of action in the complaint there is no abuse even if the plaintiff had an

ulterior motive in bringing the action, or if he knowingly brought suit upon an unfounded claim.”

Wells v. Orthwein, 670 S.W.2d 529, 532 (Mo. App. E.D. 1984); see also R. Rowland & Co., Inc.,

v. Smith, 698 S.W.2d 48, 51 (Mo. App. S.D. 1985) (issuing summons to parties on unfounded

claim was not abuse of process because summons only brought parties into court to face claim,

which is proper function of summons and not beyond scope of process).

 5
 Here, Bruce Schlafly alleged in his second amended petition that Cori had filed the trust

suit to set aside the May and August 2016 amendments not for the purpose stated therein, but

rather to accomplish collateral illegal or improper ends, including compelling him to accede to

her demands in her separate pending lawsuits against Eagle Entities, harassing him, forcing him

to incur litigation costs, and imperiling his medical practice and license. The second amended

petition failed to state a claim for abuse of process. Cori in her trust suit challenged the terms of

the trust, which is the authorized and intended use of a trust-contest process. See R. Rowland,

698 S.W.2d at 51 (“[n]o cause of action for abuse of process arises where the process is

employed to perform a function intended by law; there must be a use which is beyond the scope

of the process, and therefore improper”).

 While Bruce Schlafly asserted that Cori’s true ends were not to set aside the trust

amendments but were instead to accomplish collateral, improper ends, his allegations in the

second amended petition were conclusory and not supported by facts, and thus failed to plead

improper use of process. See Debrill, 383 S.W.3d at 90. Cases that have successfully pleaded

abuse of process aver specific actions demonstrating a willful intent to misuse the process or

specific admissions the process was being used for an improper purpose. See Ritterbusch, 789

S.W.2d at 492-94 (plaintiff in abuse-of-process claim averred defendant offered to withdraw his

prior criminal complaint in exchange for payment); Diehl v. Fred Weber, Inc., 309 S.W.3d 309,

319-21 (Mo. App. E.D. 2010) (summary judgment against Diehls in abuse-of-process suit not

appropriate when evidence showed Weber made statements saying it pursued prior defamation

litigation to quiet Diehls rather than because it believed valid defamation claim existed); Romeo

v. Jones, 86 S.W.3d 428, 429, 433-34 (Mo. App. E.D. 2002) (summary judgment against

Romeos in abuse-of-process suit not appropriate when evidence showed Jones specifically stated

 6
prior lawsuit was “to shut [the Romeos] up”); Owen v. Owen, 642 S.W.2d 410, 412, 414-15 (Mo.

App. S.D. 1982) (plaintiff in abuse-of-process claim averred defendant offered to dismiss cause

for damages if plaintiff agreed to settle separate case on his terms).

 Our review of the second amended petition and its Exhibits reveal no factually supported

allegations of such willful, definite acts or admissions by Cori that would demonstrate she had

filed the trust suit for a purpose other than to contest the trust amendments. Specifically, the

second amended petition’s allegations that Cori researched undue influence and previously

asserted Phyllis Schlafly was legally incapacitated and subject to undue influence with regards to

Cori’s litigation against Eagle Entities and PSAE did not, without more, demonstrate improper

purpose in also filing the trust suit on the same grounds. Similarly, although the second amended

petition argued Exhibit 7 supported Bruce Schlafly’s claim that Cori intended to use incapacity

and undue-influence claims and legal process to pressure him as a director EFELDF and future

trustee of ETF to gain a strategic advance in her pending lawsuits against Eagle Entities and to

enhance her claims to Eagle Entitles property, this claim was not corroborated by Exhibit 7,

which demonstrated no such admission of intentional misuse of the trust-contest process.

 Further, although the second amended petition averred that Exhibits 8, 11, and 12

revealed that Cori filed the trust suit to “create media coverage of her claims and manipulate a

prospective jury pool,” our review of these exhibits reveal no reference by Cori to manipulating

jury pools, nor any statements revealing her intention to misuse the trust process. Last, although

Bruce Schlafly argues on appeal that Exhibit 1 to the second amended petition supported his

claim that Cori intentionally used the trust suit to “quiet” his involvement in PSAE, ETF, and

EFELDF by threatening “actions to establish undue influence,” our review of Exhibit 1 does not

reveal factual support for his claim of improper use of process. Rather, Exhibit 1 was a letter

 7
from six directors of EF, including Cori, to the other six directors of EF, of which Bruce Schlafly

was not one, dated July 2016, which was nearly a year before Cori filed her trust suit. This

letter, not authored solely by Cori, predating the trust suit, and not addressed to Bruce Schlafly,

did not demonstrate a willful, definite act establishing she was using the trust suit in a manner

not authorized by the process to compel Bruce Schlafly to some collateral thing he could not be

compelled to do, as would be necessary to establish abuse of process. See Trustees of Clayton

Terrace, 585 S.W.3d at 278; Ritterbusch, 789 S.W.2d at 493; Crow, 259 S.W.3d at 116.

 While the second amended petition listed numerous examples of Cori’s improper motive

in bringing the trust suit, we do not infer improper use from evidence of an improper motive.

See Trustees of Clayton Terrace, 585 S.W.3d at 278 (“[i]t is improper to conflate these two

separate elements by inferring an improper use from a bad motive”). No matter Cori’s motive in

bringing the trust suit, her action to void the amendments was not unlawful or beyond the

authorized purpose of the trust-contest process she initiated, and thus Bruce Schlafly’s second

amended petition could not establish the first element of abuse of process. See Moffett v.

Commerce Trust Co., 283 S.W.2d 591, 600 (Mo. 1955) (because end sought was not beyond

authorized purpose of legal process initiated, it was not unlawful, regardless of motive; therefore,

petition did not state claim for abuse of process); Pipefitters Health & Welfare Trust, 760 S.W.2d

at 198-99 (there is no liability for abuse of process when a party has done nothing more than

pursue a lawsuit to its authorized conclusion regardless of how evil a motive he possessed in

initiating the process). The trial court did not err in dismissing the second amended petition.

 Points one and two are denied.

 8
 III. CONCLUSION

 Based upon the foregoing, the trial court’s judgment dismissing Bruce Schlafly’s claims

for abuse of process against Cori is affirmed.

 ROBERT M. CLAYTON III, Judge

Colleen Dolan, P.J., and
Kelly C. Broniec, J., concur.

 9